UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHEENA ANN RABIDEAU,

    Plaintiff,

v.                                                 Case No. 1:12-cv-108
                                              Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB) and Supplemental Security Income (SSI).

Plaintiff was born on March 1, 1984 (AR 188).[1] She alleged a disability onset date of September 15, 2005 (AR 188). Plaintiff earned a GED and had previous employment as a factory worker (bench assembler), housekeeping and laundry worker, secretary and waitress (AR 41-43, 68, 203). She identified her disabling conditions as: connective tissue disorder; fear of driving; autoimmune disease; hand and wrist pain from autoimmune disease; and arthritis (AR 202). On August 26, 2011, an Administrative Law Judge (ALJ), reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 15-23). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d

918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007), citing *Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits

is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fourth step. At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of September 15, 2005 and met the insured status requirements of the Act through June 30, 2012 (AR 17). At step two, the ALJ found that plaintiff had the following severe impairments: diffuse connective tissue disease; autoimmune disease; fibromyalgia; and arthritis (AR 17). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 21).

The ALJ decided at the fourth step that plaintiff has the residual functional capacity (RFC):

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b): lift/carry 20 pounds occasionally, 10 pounds frequently; sit 6 hours and stand/walk 6 hours in an 8-hour workday; occasionally climb ladders, ropes, or scaffolds; frequently crawl, crouch, kneel, stoop, balance, or climb ramps or stairs; avoid work requiring concentrated exposure to extreme cold, odors, fumes, dust or poor ventilation, and to the [sic] hazardous moving machinery and unprotected heights.

(AR 21).

The ALJ further found that plaintiff could perform her past relevant work as a bench assembler, which was unskilled, light work not precluded by her RFC (AR 23). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act from September 15, 2005 (the alleged onset date) through August 26, 2011 (the date of the decision) (AR 21).

## III. ANALYSIS

Plaintiff has raised three issues on appeal.

### A. The ALJ failed to follow the treating physician rule

Plaintiff contends that the ALJ erred by giving little weight to the opinions of his treating rheumatologist, Dr. Fiechtner and treating physician, Dr. Wiggins. Plaintiff's Brief at pp. 10-11. Plaintiff further contends that the ALJ failed to give good reasons for rejecting their opinions. Plaintiff also mentions in passing that the ALJ gave little weight to a physician's assistant, Ms. Teremi. Plaintiff's Brief at p. 10.

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations"). Under the regulations, "[t]reating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical

and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013), quoting 20 C.F.R. § 404.1527(c)(2) . However, an ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Services*, 964 F.2d 524, 528 (6th Cir. 1992).

In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

### 1. Dr. Fiechtner

Plaintiff relies on points out two opinions which she attributes to Dr. Fiechtner. However, these opinions were not given by the doctor but rather by physician's assistant Anne Teremi. The first is a "Fibromyalgia Impairment Questionnaire" dated February 18, 2010 (AR 215-19) and the second is a "Medical Examination Report" dated October 18, 2010 (AR 374-76). While plaintiff states that these documents were co-signed by Dr. Fiechtner, his signature does not appear on either document. The only reference to the doctor is an address stamp for the doctor's office placed under Ms. Teremi's name (AR 219, 376).

### a. PA Teremi's opinion and the doctor's signature

6

Defendant contends that the documents cannot be considered as the opinions of Dr. Fiechtner because he did not sign either document, pointing out that an address stamp is not the same as a signature or an authorized signature stamp. Defendant's Brief at p. 14. In her reply, plaintiff contends that "the ALJ's decision makes clear that he considered a stamp a valid endorsement by Dr. Fiechtner and weighed the opinions as such," citing AR 22. Plaintiff's Reply Brief at p. 2. Plaintiff further contends that defendant's argument regarding the doctor's stamp is a *post hoc* rationalization by the government which cannot be considered when reviewing the ALJ's decision. Plaintiff raises an issue regarding the scope of this court's review of the ALJ's decision on appeal. "Judicial review of the [Commissioner's] decisions is limited to determining whether the [Commissioner's] findings are supported by substantial evidence and whether the [Commissioner] employed the proper legal standards." *Cutlip*, 25 F.3d at 286. "In determining the existence of substantial evidence, this court must examine the administrative record as a whole. If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Id.* (internal citations omitted). *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").

Here, the record does not support plaintiff's contention that the ALJ "clearly" considered the doctor's address stamp as an endorsement of the opinions rendered by the physician's assistant. On the contrary, the ALJ viewed these opinions as those of the physician's assistant:

> Physician Assistant Teremi completed two documents (Exhibits 5E, 8F) on which were listed limitations for claimant incompatible with an ability to perform full-time competitive employment (e.g., claimant could stand/walk up to an hour in

7

a day and sit up to an hour in a day; claimant needed to periodically rest and would be absent from the job site more than three times monthly).

(AR 22). The only opinion which the ALJ attributed to Dr. Fiechtner was the doctor's July 1, 2010 correspondence (AR 383). The ALJ did not attribute either the February 18, 2010 or the October 18, 2010 opinions to Dr. Fiechtner, but he considered them as the opinions of a physician's assistant (AR 22, 215-19, 374-76). Accordingly, the February 18, 2010 and October 18, 2010 opinions are not subject to the deference given to treating physicians under the treating physician doctrine.[2]

### b. Dr. Fiechtner's July 12, 2010 letter

Dr. Fiechtner's July 12, 2010 letter stated as follows:

To Whom it May Concern,

Sheena Rabideau is currently a patient under my care for the treatment of Fibromyalgia and Connective Tissue Disorder. Currently her condition is unstable, making it difficult for her to work. In my opinion she is currently disabled until a successful treatment regiment [sic] is established. If you have any questions, please contact our office.

(AR 22, 383).

In evaluating Dr. Fiechtner's opinion, the ALJ summarized the doctor's clinical notes as follows:

During June 2009, claimant was seen by A. Teremi, PA-C, at the practice of rheumatologist, J. Fiechtner, M.D. At that time, claimant alleged shoulder, wrist and

---

[2] Plaintiff's *post hoc* rationalization argument seeks to invoke the "fundamental rule of administrative law" expressed in *S.E.C. v. Chenery*, 332 U.S. 194 (1947), "that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency." *Chenery*, 332 U.S. at 196. Here, the government's argument regarding the doctor's signature is not a *post hoc* rationalization because the ALJ attributed the opinions to the physician's assistant. Furthermore, even if the government's contention was a *post hoc* rationalization, the court would not need to address that issue if the ALJ's decision was supported by substantial evidence. *See Pasco v. Commissioner of Social Security*, 137 Fed. Appx. 828, 847 (6th Cir. 2005) (if the ALJ's decision is supported by substantial evidence, the court does not need to address claimant's objection that the lower court used a *post hoc* rationalization to affirm the ALJ's decision).

hand pain.  Claimant had widespread joint and body tenderpoints, and her transitional movements were slow and somewhat stiff.  Clamant had minimal MCP joint synovitis and none elsewhere.  Claimant displayed no skin ulceration, lesions or malar rash.  Claimant's lumbar motion was reduced, and her upper and lower extremities were fully mobile. Claimant's gait was normal and unaided. Diagnostic impression included diffuse connective disease and fibromyalgia (Exhibit 9F).

Claimant sought care July 2009 for a one-week history of anterior trunk lumps that were mildly tender.  Claimant was alert and in no acute distress.  Her cardiopulmonary and abdominal reviews were unrevealing. Claimant was prescribed narcotic medication (Exhibit 6F).

During an October 2009, evaluation with Dr. Fiechtner, claimant was alert, oriented, in no acute distress, well developed and nourished.  She claimed to be tender about spinal and DIP areas.  No synovitis was appreciated.  Claimant performed transitional movements and ambulated normally. Claimant said she walked two miles daily for exercise (Exhibit 9F p. 11).

\*     \*     \*

When seen April 27, 2010, claimant was described as well appearing, well nourished and in no distress.  Claimant was oriented, and her memories, mood and affect were normal.  Claimant had right shoulder trapezius spasm.  Spinal review disclosed no deformity or tenderness.  Claimant's peripheral pulses were intact, and her range of motion was full.  Claimant manifested no atrophic changes, joint tenderness, swelling, discoloration or effusions.  Her coordination, deep tendon reflexes, sensory and cranial nerve functions were without anomaly.  Claimant's gait and station were normal and unaided (Exhibit 7F pp. 38,39).  Over the ensuing days, claimant was reportedly upset that her request for narcotic derivative medication was denied (Exhibit 7F pp. 18, 31).  As of June 18, 2010, claimant admitted to possible misuse of prescribed medication (Exhibit 7F p.14).  A short time later, claimant was able to secure narcotics from a different provider (Exhibit 7F p.8), though she complained that the quantity of such was insufficient (Exhibit 9F pp. 8,9).

During June 2010 presentations, claimant's complaints included headache, jaw, neck and shoulder pain.  Claimant had bilateral shoulder crepitus with full extremity range of motion.  Claimant's motor power and sensory functions were intact, and her limbs were nonedematous.  X-ray reviews of claimant's shoulders were normal.  Cervical spine films were negative save form mild spurring (Exhibit 6F, 7F pp. 72-76).

\*     \*     \*

9

In an October 2010, notation, physician assistant Teremi reported claimant had spinal and joint tenderness, as well as decreased cervical and lumbar motion. The clinician further reported claimant had no evidence of synovitis, redness, deformity or gait disturbance (Exhibit 9F). That same month, claimant was able to augment her narcotic medication dose by seeking care via emergency room presentation (Exhibit 10F p.9).

(AR 18-19).

In reviewing PA Teremi's opinions and Dr. Fiechtner's July 12, 2010 letter, the ALJ observed that "[n]either clinician listed much in the way of specific objective evidence to support their views" (AR 22). The ALJ continued:

Progress notes from their practice, including that summarized above, disclose fairly modest anomalies and certainly none giving rise to the level of dysfunction suggested. Little weight is accorded the viewpoints of clinicians Fiechtner and Teremi, because they are contraindicated by substantial evidence in the record.

(AR 22).

The ALJ articulated good reasons for giving little weight to Dr. Fiechtner's July 10, 2012 opinion. The progress notes reflect that plaintiff's condition was not so severe as to preclude all employment. Furthermore, although Dr. Fiechtner was a treating physician, the ALJ was not bound by the doctor's conclusion that plaintiff was unable to work. *See* 20 C.F.R. §§ 404.1527(d)(1) and 416.937(d)(1) ( "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled' ). Such statements, by even a treating physician, constitute a legal conclusion that is not binding on the Commissioner. *Crisp v. Secretary of Health and Human Services*, 790 F.2d. 450, 452 (6th Cir. 1986). The determination of disability is the prerogative of the Commissioner, not the treating physician. *See Houston v. Secretary of Health and Human Services*, 736 F.2d 365, 367 (6th Cir. 1984). Accordingly, plaintiff's claim with respect to Dr. Fiechtner should be denied.

## 2. Dr. Wiggins

Plaintiff also relies on a questionnaire completed by Dr. Wiggins which identifies plaintiff's condition as "fibromylagia, autoimmune disorder, connective tissue disorder, anxiety, joint pain, disc dis [sic], radiculitis, "att defic nonhperact" [sic], spasm muscle, lumbago" (AR 220).[3] The doctor estimated plaintiff's level of pain and fatigue, using a scale of 1 to 10, as "7" (AR 222). The doctor stated that plaintiff could sit for 2 hours in an eight-hour day and "0-1" hour standing/walking in an eight-hour day (AR 222). The doctor indicated that is would be "medically recommended" that plaintiff not "stand/walk" continuously in a work setting (AR 223). Plaintiff could lift and carry "0 - 5" pounds occasionally (AR 223). The questionnaire itself contains little supporting information. The clinical findings are listed as multiple myalgia and tender points (AR 220). No laboratory findings or diagnostic test results are given in support of the questionnaire (AR 221). Rather, the doctor simply stated "Sees Rheum." (AR 221). The description of the pain is "muscle pain" with the location given as "diffuse" (AR 221). The doctor also stated that plaintiff was incapable of performing even low stress work due to chronic pain (AR 226).

In evaluating Dr. Wiggins' opinions, the ALJ summarized the doctor's treatment of plaintiff as follows:

> Claimant was seen September 21,2010, by S. Wiggins, D.O., at East Michigan Family Care (Family Care). Claimant's blood pressure was recorded as 114/80, and her heart and lung sounds were within normal limits. Dr. Wiggins reported that claimant was well developed and nourished, neurologically intact, and that she had no joint effusion, crepitus, deformity, effusion or swelling. The doctor further reported that claimant's limbs were not clubbed, cyanotic or edematous. According to the doctor, claimant's pulses and capillary refill were appropriate. Claimant's psychiatric status was normal (Exhibit 13F). Dr. Wiggins cited similar

---

[3] The court notes that the multiple impairment questionnaire is addressed to Dr. Andre Smith (AR 220), but appears to have been signed by Dr. Wiggins (AR 227).

11

benign findings during October 4 and 18, and November 15,2010 examinations. Claimant was prescribed muscle relaxing and narcotic medications (Exhibit 13F).

* * *

Claimant averred some lower back and sciatic notch tenderness during a January 10, 2011, Family Care visit. Claimant denied other musculoskeletal problems or headache. Dr. Wiggins observed that claimant was well developed and nourished, and that her joint, muscle and extremity reviews were normal. The doctor also noted that claimant manifested noneurovascular dysfunction (Exhibit 13F). Though Dr. Wiggins' February 11, 2011, evaluation report was benign in nature, the clinician acquiesced to claimant's request for larger dosage of pain medication (Exhibit 13F pp. 17-19).

* * *

Claimant complained of depression and anxiety during a March 13, 2011, Family Care presentation. Dr. Wiggins reported that claimant was normal from a psychiatric standpoint. The doctor noted that claimant's pulses and neurological functions were intact; that she had no joint effusion, crepitus, swelling or deformity; and that no motor, sensory, reflex or other neurological deficits were evident (Exhibit 13F).

On March 27 and April II, 2011, Dr. Wiggins noted that claimant was well nourished, well developed, neurovascularly intact, and without overt joint or extremity abnormality. Claimant demonstrated normal heart, lung, and bowel sounds, and no psychological disturbance (Exhibit 13F).

As of May 11, 2011, claimant complained of hand pain and swelling. Claimant explained that she was changing residences and had been doing a lot of moving in the process. Claimant again requested increase in her prescribed narcotic pain medication. Claimant also alleged feeling anxious. Dr. Wiggins observed no hand or other swelling manifested by claimant. The doctor reported that claimant was neurologically intact, had good pulsation, no joint effusion, crepitus or deformity, and no abnormal mentation (Exhibit 14F).

On July 7,2011, claimant complained of trapezius muscle spasm, and otherwise, her review of systems was benign. Dr. Wiggins cited normal clinical findings. Claimant was well developed and nourished. Her neck was supple and nontender. She had clear lung fields, regular cardiac rate and rhythm. Her pulses were 2/4 throughout, and her capillary refill was not delayed. She had no swelling or joint anomalies, and her extremities were not clubbed, cyanotic or edematous. Claimant's integumentary and neurological reviews were unremarkable (Exhibit l4F).

(AR 19-20).

After his review of the treatment record, the ALJ gave little weight to Dr. Wiggins' April 11, 2011 "Multiple Impairment Questionnaire":

> Likewise, little weight is due the opinion expressed by Dr. Wiggins in an April 12, 2011 appraisal (Exhibit 6E). Wiggins concluded claimant was limited to 2-3 hours combined sitting, standing and walking; had markedly limited upper extremity use; would often need unscheduled breaks; would frequently have deficits of attention/concentration due to symptoms, etc. As chronicle [sic] earlier in this decision, Wiggins' own narratives of claimant's evaluations were consistently devoid of abnormal findings. Wiggins' opinions as to claimant's functionality is not well supported objectively, and is inconsistent with other substantial evidence.

(AR 23).

The ALJ's gave good reasons for assigning little weight to Dr. Wiggins' opinion, and plaintiff's claim of error should be denied.

### B. The ALJ failed to properly evaluate plaintiff's credibility

Plaintiff contends that the ALJ did not properly evaluate plaintiff's credibility. An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the

finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

The ALJ summarized plaintiff's credibility using the typical language as found Social Security decisions:

> After careful consideration of the evidence, I find claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(AR 22).

Plaintiff raises three objections to the ALJ's credibility determination. First, plaintiff contends that the ALJ used a template which was insufficient for making a credibility determination.[4] Even if the ALJ's standard "template" form is lacking, the ALJ's credibility evaluation is supported by substantial evidence:

> Specifically, I note the result of CT, EMG, radiographic, serology and clinical evaluations, which do not show totally debilitating pathology. Imaging studies of claimant's spine were negative for malalignment, herniation, stenosis, cord or nerve root embarrassment, significant degenerative or erosive changes. EMG investigation disclosed no radial tunnel, polyneuropathy or underlying radicular process. Claimant has been diagnosed with connective tissue/autoimmune disorders. Fortunately, these conditions appear well managed and relatively quiescent. Claimant's clinical presentations were typically negative for obvious inflammation,

---

[4] Plaintiff cites language from *Bjornson v. Astrue*, 671 F.3d 640 (7th Cir. 2012) which criticizes the form of the "template" language used by ALJ to evaluate credibility and states that "The Social Security Administration had better take a close look at the utility and intelligibility of its "templates." *Bjornson*, 671 F.3d at 646. While that court's criticism of the template may be justified to some extent, such criticism does not establish that the ALJ in this case failed to properly evaluate plaintiff's credibility.

14

> meaningful synovial thickening, joint deformity, nodules, vasculitis, ulnar deviation, documented erosive changes or pericardial effusions. Claimant does not suffer ocular manifestations, generalized adenopathy, splenomegaly, pericarditis, hemolytic anemia, renal or central nervous system involvement.
>
> Clinicians observed claimant ambulate normally without an assistive device and to retain functional range of motion. Claimant's neurological functions in terms of motor power, reflex activity and sensation were intact, and her musculoskeletal and extremity reviews were free of commonly free of clubbing, cyanosis, edema, heat, discoloration, ulceration, diminished pulsation or atrophic changes. The evidence does not fully support claimant's contentions as to the magnitude of her symptomatology and dysfunction, including her expressed need to lie down and rest for extended intervals on most days. During the hearing, claimant claimed her hand and knuckles were read and swollen, but I did not see this.
>
> Claimant has a fairly scant work record, and she devotes her time mothering her young child. Within testimony or the written record, it was reported that claimant was able to perform self-care tasks and other activities. Claimant prepared meals, washed dishes and laundered clothing. In addition, the completed light household cleaning and gardening chores, shopped with others, and attended to family financial matters. Further, claimant surfed the Internet, listened to music, watched television, enjoyed crafts and learning to tattoo from her husband. Claimant walked for exercise, and to her credit, provides consistent care for her child (Exhibits 8E, 9F p. 11).

(AR 22).

Second, plaintiff contends that the ALJ's observation of her hand and knuckles cannot be credited as medical evidence. Plaintiff appears to be referring to a form of the so-called sit and squirm test. The Sixth Circuit has repeatedly rejected the application of this test, in which an ALJ dismisses a claim for pain "solely on the ALJ's observations at the hearing." *Martin v. Secretary of Health and Human Services*, 735 F.2d 1008, 1010 (6th Cir. 1984). Here, the ALJ did not dismiss plaintiff's claim solely due to his observations at the hearing, but merely mentioned this observation in passing. As discussed, *supra*, the ALJ relied on the entire record in making the credibility evaluation.

15

Third, plaintiff contends that the ALJ's characterization of her ability to care for herself and engage in activities of daily living "is a significant gloss on Ms. Rabideau's statements." Plaintiff's Brief at p. 17. Plaintiff, referring to her Function Report, points out that she described doing activities in 1/2 hour periods, taking her time to do them or having help with her husband when she cannot do them. Plaintiff's Brief at p. 17. Plaintiff appears to be referring to questions regarding house and yard work, in which she stated that she cleans for about 1/2 hour, does laundry on and off, performs quick repairs (5 minute jobs) and that "[i]f I endure the gardening I take my time and be careful" (AR 238). Plaintiff states that she needs help with these chores, i.e., "sometimes I get really behind on all things and my husband is such a big help" (AR 238). Plaintiff stated that some days she is in so much pain or so tired that she cannot perform these household and yard chores (AR 239). Plaintiff also stated that she goes outside every day, walks, rides in a car, and shops once or twice a week (AR 239). Plaintiff still gardens, but notes that it takes her a long time to finish, and that she used to be good at tattooing as a hobby but she cannot hold the machine anymore (AR 240).

The court does not find the ALJ's summary of these activities to be exaggerated or "glossed". While plaintiff may not have engaged vigorously in all of these activities, such endeavors are not indicative of an invalid, incapable of performing any type of work. *See, e.g., Pasco v. Commissioner of Social Security*, 137 Fed. Appx. 828, 846 (6th Cir. 2005) (substantial evidence supported finding that plaintiff was not disabled where plaintiff could "engage in daily activities such as housekeeping, doing laundry, and maintaining a neat, attractive appearance" and could "engage in reading and playing cards on a regular basis, both of which require some concentration") (footnote omitted); *Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993) (a claimant's ability to perform

16

household and social activities on a daily basis is contrary to a finding of disability); *Gist v. Secretary of Health and Human Services*, 736 F.2d 352, 358 (6th Cir. 1984) (a claimant's capacity to perform daily activities on a regular basis will militate against a finding of disability). Furthermore, the ALJ properly considered plaintiff's "fairly scant work record" in making the credibility determination. See 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) ("[w]e will consider all of the evidence presented, including information about your prior work record . . ."). Based on the entire record of this case, the court concludes that the ALJ's credibility determination was supported by substantial evidence. There is no compelling reason for the court to disturb that determination. *Smith*, 307 F.3d at 379. Accordingly, plaintiff's claim of error should be denied.

        **C.    The ALJ relied upon flawed vocational expert testimony**

Plaintiff contends that the ALJ relied upon flawed vocational expert (VE) testimony at Step Four of the sequential evaluation. It is the claimant's burden at the fourth step of the sequential evaluation to show an inability to return to any past relevant work. *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir.1980). To support a finding that a claimant can perform his or her past relevant work, the Commissioner's decision must explain why the claimant can perform the demands and duties of the past job as actually performed or as ordinarily required by employers throughout the national economy. *See Studaway v. Secretary of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir.1987); *see also* 20 C.F.R. § 404.1565. Here, the ALJ determined that plaintiff was not disabled at Step four of the sequential evaluation because she could perform her past relevant work as a bench assembler (AR 23).

A VE's testimony is not required when the ALJ determines that a claimant is not disabled at step four of the sequential evaluation. *See Banks v. Massanari*, 258 F.3d 820, 827 (8th

Cir.2001) (vocational expert testimony is not required until step five of the sequential analysis); *Parker v. Secretary of Health and Human Servs.*, 935 F.2d 270, 1991 WL 100547 at *3 (6th Cir.1991); *Rivera v. Barnhart*, 239 F.Supp.2d 413, 421 (D.Del.2002). However, the ALJ may use a vocational expert's services in determining whether a claimant can perform his past relevant work. 20 C.F.R. § 404.1560(b)(2) (a VE "may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy"). *See, e.g., Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir.2006) (observing that the ALJ may use a VE's "expert advice" to assist him in deciding whether the claimant can perform his past relevant work at step four of the evaluation).

When the court obtains vocational evidence through the testimony of a VE, the hypothetical questions posed to the VE must accurately portray the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

Here, the ALJ found that plaintiff could perform her past relevant work, relying in part on the VE's response to a hypothetical question to the VE (AR 23). Plaintiff contests the VE's response on three grounds. First, plaintiff contends that the RFC determination, which is the basis for the hypothetical question posed to the VE, is not supported by substantial evidence because the

18

ALJ failed to properly evaluate the opinions of plaintiff's treating physicians. Plaintiff's Brief at p. 18. This contention is without merit because the ALJ did not commit those alleged errors. *See,* Discussion at III.A., *supra.* Second, in a related objection, plaintiff contends that the ALJ should have accepted the VE's opinion that if the hypothetical person would be absent from work for more than three times per month, then that person could not tolerate full-time employment (AR 18, 69-70). The ALJ, however, did not need to include this limitation because he did not find that plaintiff would miss work for more than three times a month (AR 21). *See Stanley*, 39 F.3d at 118; *Blacha*, 927 F.2d at 231.

Third, plaintiff contends that the she could not perform even sedentary work, citing questionnaires and reports of Drs. Fiechtner and Wiggins (AR 217, 222 and 375). Plaintiff's Brief at p. 18. As discussed, the opinions expressed in the Fibromyalgia Impairment Questionnaire (AR 217) and the Medical Examination Report (AR 375) are not the opinions of Dr. Fiechtner. While Dr. Wiggins opined that plaintiff could only sit for two hours and stand for up to one hour in an eight-hour workday (AR 222), the ALJ could properly give little weight to those opinions. *See* discussion in § III.A.2. Plaintiff's claim of error with respect to the VE's testimony should be denied.

**IV.  Recommendation**

For these reasons, I respectfully recommend that the Commissioner's decision be **AFFIRMED**.


Dated:  June 21, 2013                              /s/ Hugh W. Brenneman, Jr.
                                                   HUGH W. BRENNEMAN, JR.
                                                   United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).